56 CCPA

**Application of Edward J. HOFFMAN.**
**Patent Appeal No. 8072.**

United States Court of Customs
and Patent Appeals.
March 6, 1969.

Larson & Taylor, Washington, D. C., (Walter C. Gillis, Jr., Washington, D. C., of counsel), for appellant.

Joseph Schimmel, Washington, D. C., (Fred W. Sherling, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, ALMOND, BALDWIN and KIRKPATRICK *, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals, adhered to on reconsideration, affirming the rejection of claims 4 through 9 of application serial No. 198,318, filed May 28, 1962, entitled "Process for Resolution of Hydrocarbon Streams." No claim has been allowed.

The invention relates to a process for separating a multicomponent hydrocarbon mixture, e.g., a natural gas feed, into high- and low-boiling fractions. Claims 5 through 9 are all ultimately dependent on claim 8. At oral argument, appellant's attorney stated that "all claims stand or fall together"; we therefore need consider only the rejection of claim 8, which reads (our emphasis):

8. A continuous process for the sharp resolution of a multicomponent mixture of hydrocarbons of wide volatility range comprising:

(a) introducing a feed stream comprising a multicomponent mixture of hydrocarbons of wide volatility range *intermediate the top and bottom of a column* to contact said stream with a downflowing stream of an absorption solvent of low volatility to provide an absorption section in the portion of said column above said feed point to absorb substantially all the hydrocarbons [sic] constituents having boiling points not lower than a desired separation point, and, to a lesser extent, to absorb a portion of the hydrocarbons having boiling points not higher than said desired separation point;

(b) collecting an overhead product from said column consisting essentially of hydrocarbon constituents having boiling points not higher than that of the desired separation point;

(c) removing an enriched solvent stream containing said hydrocarbon

---

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

constituents as a bottoms stream from said column;

(d) passing said column bottoms stream as feed to a distillation process;

(e) distilling said column bottoms stream to vaporize an overhead stream consisting essentially of hydrocarbon constituents having a boiling point not higher that [sic] that of said absorption solvent and to form a bottoms stream of solvent and hydrocarbon constituents having a boiling point not lower than that of said solvent;

(f) partially condensing said vaporized overhead stream to form a gaseous phase and a liquid product phase consisting essentially of hydrocarbon constituents having boiling points not lower than said desired separation point;

(g) passing at least a portion of said gaseous phase to said column at a point *below the feed point of said hydrocarbon stream* to contact said downflowing solvent with said gaseous phase to provide a stripping section in said column below said feed point.

The overall process can best be understood by reading claim 8 in conjunction with the following diagram of the claimed process:[1]

FIGURE I
ABSORBER OIL

RECYCLE OF GASEOUS PHASE OVERHEADS TO LOW PORTION OF ABSORBER COLUMN

(OPTIONAL BLEED)

MULTICOMPONENT HYDROCARBON FEED

CONDEN-SATION

ABSORBER COLUMN

RICH OIL

DISTILLATION

HIGH BOILER PRODUCT

LEAN OIL

(CONTAINS VERY HIGH BOILERS)

APPELLANT

The only issue is whether the claimed invention is obvious in view of the prior art and therefore unpatentable under 35 U.S.C. § 103. The rejection is based on two United States patents:

Parsons et al.  3,060,662  Oct. 30, 1962
Kassel      2,685,941  Aug. 10, 1954

1. Reproduced from Brief for Appellant.

Figure II,[2] infra, is a simplification of Figure 1 of the Parsons et al. patent (hereinafter "Parsons") showing the key features of the Parsons process.

## FIGURE II

PARSONS

With reference to Figure II, a natural gas feed stream 11 is ultimately separated into a propane-and-higher-boiling fraction and an ethane-and-lower-boiling fraction. The feed is introduced to absorber 12 where it is contacted with down-flowing absorption oil which preferentially absorbs propane and higher-boiling hydrocarbons. Ethane and lower-boiling hydrocarbons, containing some propane and heavier hydrocarbons, are collected as the overhead product of absorber 12. Rich oil 15 removed from the bottom of the absorber contains most of the propane and heavier hydrocarbons and a good deal of ethane and lighter hydrocarbons from the feed stream. Some of the absorbed hydrocarbons are removed from the oil by the flashing step 27 and are recycled to the reabsorber via line 28. Rich oil leaving the flasher is subjected to distillation wherein the remaining absorbed hydrocarbons are separated from the oil. Lean oil 43, obtained as distillation bottoms, is recycled to the absorber and reabsorber. Stream 18 separated by the distillation is subjected to condensation (not shown) and flashing to produce a liquid phase 21 and a gaseous phase 20.

2. Reproduced from Brief for Appellant.

The gaseous phase is recycled to the reabsorber, and the liquid phase is separated by distillation into an overhead 53 of ethane and lighter materials and an ultimate propane fraction. The overhead is recycled to the reabsorber. Parsons also shows "another gasoline plant" 12a which provides a stream introduced into the reabsorber via recycle stream 20.

## FIGURE III

KASSEL

---

Kassel relates to a method of producing purified hydrogen from gaseous mixtures containing $C_1$–$C_5$ hydrocarbons. Referring to the "Secondary Absorber" in Figure III, a multicomponent gaseous feed stream $G_1$ containing hydrogen, methane, ethane, and propane is introduced intermediate the ends of the secondary absorber 14. The gas rising in the secondary absorber is contacted with a secondary absorber oil stream $L_3$ which comes from the secondary stripper and enters the top of the absorber. A product stream $G_2$ rich in hydrogen is removed as overheads, and rich secondary absorber oil stream $L_4$ is removed as bottoms. Stream $L_4$ is subjected to flashing in chambers 21, 27, and 32 and then to stripping in the secondary strip-

per 24. Overheads from the secondary stripper are recycled via $G_5$ to the secondary absorber where they are introduced *below the point of introduction of feed stream $G_1$.*

It was the examiner's position that considering reabsorber 23 of Parsons to be the absorber recited in claim 8, stream 28 to be the feed stream, and combined streams 20 and 53 to be recycle streams, the sole significant difference between the claimed process and that of Parsons is that in the former the recycle stream is introduced to the absorber at a point below that at which the feed is introduced (see claim step "g"), whereas in the latter the feed and recycle streams are introduced at the same point, near the bottom of the absorber. This is also

the only difference urged by appellant in support of his contention that his process is not obvious. With respect to this difference, the examiner noted that in Kassel recycle stream $G_5$ is introduced into absorber 14 below feed stream $G_1$ and concluded that:

> It would therefore be obvious for one of ordinary skill in the art in view of Kassel to apply the teaching to pass a vapor reflux stream to an absorber below the feed introduced therein in Parsons et al. if not obvious over Parsons et al. per se.

The board agreed with the examiner and so do we.

■ Appellant's main argument is based on an alleged absence of a teaching in the cited art that would render obvious the introduction, into an absorber, of a recycle stream below a feed stream when the recycle contains more low boilers (that is, contains "lighter" components) than does the feed.[3] Appellant maintains that the Patent Office has not shown Parsons' stream 28, which the examiner equated to "feed" in the claimed process, to be heavier than combined recycle streams 53 and 20 and also maintains that Kassel's feed stream $G_1$ is lighter than recycle stream $G_5$ Implicit in this argument is the suggestion that *in the claimed process* the recycle gases are lighter than the feed. It will be observed, however, that claim 8 is not so restricted, mention not being made of the composition of the recycled gases relative to the feed.[4] We therefore consider the alleged deficiency in the cited art to be irrelevant.

■ Appellant also argues that the rejection is not sound because "Column 23 of Parsons is a reabsorber, not an

absorber." We do not find this argument to be convincing, however, because it is evident that the purpose of Parsons' "reabsorber" is the same as that of the absorber in the claimed process, namely, to effect separation between ethane and propane.

The decision of the board is affirmed.

Affirmed.

KIRKPATRICK, J., took no part in the decision of this case.

---

3. Appellant has conceded that "it is obvious as a general proposition to introduce heavier feed fractions below lighter feed fractions."

4. At one point during the prosecution, step (g) read:

> (g) passing at least a portion of said gaseous product phase to said column at a point below the feed point of said hydrocarbon stream to contact said down-flowing oil *with low-boiling gaseous product* to provide a stripping section in said column below said feed point. [Emphasis added.]

The phrase "with low-boiling gaseous product," however, was subsequently cancelled, apparently because this phrase finds no basis in the specification.